RALPH AND JEANNE K. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket Nos. 5694-84; 32283-87.
United States Tax Court
T.C. Memo 1989-87; 1989 Tax Ct. Memo LEXIS 76; 56 T.C.M. (CCH) 1373; T.C.M. (RIA) 89087; February 28, 1989. *76 Petitioners executed consent Forms 872 extending the statute of limitations on assessment and returned them to respondent with a cover letter stating they were conditioned upon respondent transferring the related audits from Connecticut to California. Respondent's delegated agent executed the consents and either did not see or ignored the cover letter. Respondent's efforts to transfer the audit to California were unsuccessful. Held: the consent Forms 872 were invalid, the cover-letter condition to which they were subject not having been met. Further held, petitioners are not equitably estopped to claim the bar of the statute of limitations. Further held, assessments for the years 1979, 1980, and 1982 are barred by the expiration of the period of limitations and assessment for 1978 is barred as to both petitioners unless respondent proves fraud. Steven S. Davis, for the petitioners. Steve M. Roth, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: These two consolidated cases were assigned to Special Trial Judge Buckley pursuant to the provisions of section 7456(d) (redesignated sec. 7443A(b) by sec. 1556 of the Tax Reform Act of 1986,) and Rules 180 and 181. [1] After a review of the record, we agree with and adopt her opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE BUCKLEY, Special Trial Judge: In docket No. 5694-84, respondent by notice of deficiency dated December 21, 1983, determined deficiencies in petitioners' 1977 Federal income tax in the amount of $ 46,265.12, together with additions to tax under section 6651(a)(1) in the amount of $ 11,767.03 and under section 6653(a) in the amount of $ 2,313.26. This opinion, however, concerns facts related to docket 32283-87, in which respondent *79 by notice of deficiency dated June 25, 1987, determined deficiencies in petitioners' Federal income taxes as follows: Year
Tax
§ 6653(a)
1978
* $ 343,789
-
1979
909,144
$ 45,457
1980
401,639
20,082
1981
356,908
-
1982
221,134
-
Additions to Tax
Year
§ 6653(a)(1)
§ 6653(a)(2)
§ 6653(b)
§ 6659
§ 6661
1978
-  -  * $ 171,895
-  -  1979  -  -  -  -  -  1980
-  -  -  -  -  1981
17,845 **
-  $ 52,503
-  1982
11,057 **
-  37,608
$ 23,944
The issue for decision is whether assessment and collection of the determined deficiencies are barred by the statute of limitations. FINDINGS OF FACT Petitioners resided in Stratford, Connecticut, when they filed their petition in docket No. 5694-84 and in Boca Raton, Florida, when they filed their petition in docket No. 32283-87. Petitioners allege, inter alia, that the statute of limitations serves to bar the assessment *80 of tax for each of the years at issue in docket No. 32283-87, with the exception of 1981. Petitioners agree that if this Court eventually makes a finding of fraud against Ralph Smith for 1978, the statute of limitations will not bar assessment as to him and for reasons hereinafter stated we hold it will not bar assessment as to Jeanne Smith. Petitioners filed a Motion to Dismiss for Lack of Jurisdiction as to docket No. 32283-87 based upon the bar of the statute of limitations and respondent filed notice of objection thereto. The statute of limitations is a defense in bar and not a plea to our jurisdiction. Badger Materials, Inc. v. Commissioner,40 T.C. 1061 (1963). Accordingly, we have treated petitioners' motion as a motion to sever and try the statute of limitations issues separately. A hearing was held, extensive testimony was taken, and numerous exhibits were received. Petitioners' income tax returns were filed as follows: Year
Filing Date
1978
April 15, 1979
1979
April 28, 1980
1980
June 8, 1981
1981
April 15, 1982
1982
April 15, 1983
About May 27, 1983, the Criminal Investigation Division of the Internal Revenue Service *81 (IRS) served summons pursuant to section 7609 upon petitioners' accountants located in Connecticut and California. The summons directed their accountants to produce petitioners' records for the taxable years 1978 through 1981. On June 6, 1983, petitioners filed a petition to quash summons served upon their Connecticut accountants with the U.S. District Court for Connecticut. On June 15, 1983, petitioners filed a petition to quash summons served upon their California accountants with the U.S. District Court, Central District of California. Dismissal of the petitions to quash occurred on April 18, 1984, in Connecticut, and on January 14, 1986, in California. The 60-day appeal period from the dismissal of the last petition to quash in California ended on March 17, 1986. Rule 4(a)(1), Rule 26, Fed. Rules App. Proc.
The outcome of this severance to determine the statute of limitations issues depends upon the validity of certain Forms 872 executed by petitioners' counsel and the IRS in March of 1986 to extend the period within which the IRS may assess. Although the documents alone control this issue, it is instructive to consider the dynamics of the situation underlying the execution *82 of the waiver forms. Revenue Agent Norman Sandel, located in Bridgeport, Connecticut, was conducting an examination of petitioners' income tax returns for years 1978 through 1982. On November 13, 1985, he requested petitioners to execute Form 872, consent to extend the limitations period, for their 1982 year. Petitioners' counsel, Ellen Batzel of Los Angeles, contacted Mr. Sandel by telephone in January of 1986. She advised him that petitioners wished to have the audit transferred to Los Angeles where their books and records, their accountant, and their attorneys were located. Mr. Sandel, who did not have a power of attorney from Ms. Batzel, did not inform her that he had closed the case at the end of December 1985. Ms. Batzel forwarded powers of attorney to Mr. Sandel on January 24, 1986, but they apparently were not received by Mr. Sandel. On February 24, 1986, Mr. Sandel (although he apparently considered he had finished the audit) contacted Ira Gelfman, petitioners' accountant in California, and asked him to honor the summons which had been served in 1984. Mr. Gelfman contacted Ms. Batzel regarding the Sandel call. Her partner John Malmrose called Mr. Sandel and was *83 referred to Revenue Agent Florence Houghton of the Quality Review Staff in Hartford, Connecticut. Ms. Batzel telephoned Ms. Houghton to discuss transferring the audit to Los Angeles. Ms. Houghton advised Ms. Batzel that subject to checking with her superiors she did not see a problem in transferring as long as waivers extending the statute of limitations were executed. Ms. Houghton did not advise Ms. Batzel that the audit had been completed. She sent Forms 872 to Ms. Batzel. Under date of March 21, 1986, Ms. Batzel wrote a letter to Ms. Houghton in regard to the Forms 872 stating as follows: Pursuant to instructions from the above-referenced taxpayers, and pursuant to our power of attorney to represent the taxpayers for the taxable years in question, we have executed the enclosed Forms 872 Consents to Extend the Time to Assess Tax for the 1978, 1979, 1980, 1981 and 1982 taxable years of the taxpayers. The waivers are expressly conditioned upon, and are being delivered to you subject to, the transfer of any new or continuing audit or examination of the taxpayers for such taxable years from the office of the District Director of Hartford to the Office of the District of Los *84 Angeles. Please return copies of these waivers to me once executed by the proper person or persons at your office. Enclosed with this letter but not attached thereto were two Forms 872 "Consent to Extend Time to Assess Tax," executed by Ms. Batzel, under her power of attorney, one for the years 1978 through 1981 and one for the year 1982. Both forms extended the statute to June 30, 1987. Both were subsequently executed by Ms. Houghton's supervisor, Arnold Mann, who was Chief, Quality Review Section. Copies of the fully executed Forms 872 were sent to Ms. Batzel under date of March 24, 1986, but her cover letter was not attached thereto. Clearly, the IRS received Ms. Batzel's March 21, 1986, letter because the IRS administrative file contained Ms. Batzel's letter. Mr. Sandel did not see it, nor did Mr. Mann who executed the Form 872 consents. Ms. Houghton, to whom the letter was addressed, while she did not deny receiving the letter, did not remember receiving it. Both Ms. Houghton and Mr. Mann stated that if the conditions contained in the Batzel March 21st letter had been incorporated on the Form 872 itself, it would have been referred to District Counsel for approval. *85 There was no such referral. They also both testified that in their opinion any conditions or restrictions to a Form 872 must be contained on the document itself. The IRS (Hartford), on March 31, 1986, attempted to transfer these audit years to the Los Angeles District Office. That district rejected the transfer on June 9, 1986. Mr. Mann and Ms. Houghton both insist that they promised only to attempt to transfer the case to California. They made the attempt. It was not successful. On July 29, 1986, Mr. Mann advised Ms. Batzel that the Los Angeles District Office had refused to take over the audit. In this conversation she noted that the consents were conditioned upon transferring the audit. She reiterated her contention by letter dated August 15, 1986, addressed to Mr. Mann. Mr. Mann received the letter and forwarded it on August 26, 1986, to agent Sandel's supervisor, Peter Abbagnaro, asking him to telephone Ms. Batzel. Both Mr. Mann and Mr. Abbagnaro testified that they did not notice the second paragraph of the August 15, 1986, Batzel letter although they admitted receiving the letter. That paragraph read: On March 21, 1986, on behalf of the taxpayers, we sent to Florence *86 Houghton of your office Forms 872 Consents to Extend the Time to Assess for the 1978, 1979, 1980, 1981 and 1982 taxable years, which Consents were expressly conditioned upon "the transfer of any new or continuing audit or examination of the taxpayers for such taxable years from the office of the District Director of Hartford to the office of the District Director of Los Angeles." Her letter went on: On August 7, we advised you that we would prefer to leave all channels for administrative review open and therefore accepted your suggestion that a 30-day letter be prepared. We do not, however, by this action waive, and expressly do reserve, any legal rights, remedies, arguments, or objections the taxpayers may have. Respondent eventually issued the notice of deficiency on June 25, 1987. OPINION Respondent contends that the statute of limitations for each of the years 1978 through 1982 was validly extended in March of 1986 to June 30, 1987 and that the notice of deficiency issued June 25, 1987, accordingly was issued within the statutory period. Petitioners contend that they executed a conditional waiver of the statute of limitations, that the IRS failed to meet the conditions *87 of the waiver, and accordingly the limitations period was not extended to June 30, 1987. We must therefore consider whether the Batzel March 21st letter constituted a condition upon the extension of the statutory period for each of the years involved. The general rule set forth in section 6501(a) is that any tax is to be assessed within three years after the return was filed. One exception is if a taxpayer files a false or fraudulent return, then the tax may be assessed at any time. Sec. 6501(c). [2] The three-year period may be extended, however, if taxpayer and the IRS execute a written agreement prior to expiration of the limitations period. Sec. 6501(c)(4). In addition, section 7609(e) of the Code provides for the suspension of the running of the statute of limitations, where as here, petitions to quash summons were filed, for the period of any proceeding and appeals therein, *88 with respect to the enforcement of such pending summons. The summons proceedings in this matter concerned the years 1978 through 1981. Thus, as to those years section 7609(e) suspended the period of limitations between the period June 6, 1983, when the first petition to quash was filed in Connecticut until the dismissal of the petition to quash in California on January 14, 1986, which became final on March 17, 1986. Rule 4(a)(1), Rule 26, Fed. Rules App. Proc.
With these principles in mind, the statutory period for assessment, absent the Forms 872 in controversy, would expire as follows: Ext. by
Days Suspended
Expiration of S/L
3 Years from
earlier
under S/L as
(3/17/86 +
Year
filing date
872
of 6/6/83
suspended days)
1978
4/15/82
12/31/83
208
10/13/86
1979
4/28/83
12/31/83
208
10/13/86
1980
6/8/84 -
367
3/19/87
1981
4/15/85
-
678
1/25/88
1982
4/15/86
-
not applicable
4/15/86
Thus, if the March 1986 Forms 872 are not valid, the statute of limitations bars issuing a June 25, 1987 notice of deficiency to petitioners, absent fraud, for the years 1978, 1979, 1980 and 1982. There is no bar as to 1981. Respondent, *89 however, has determined that Ralph Smith (but not Jeanne Smith) filed a fraudulent return for 1978. If respondent proves fraud as to Ralph Smith for 1978 that year will not be barred by the statute of limitations as to either spouse. We have consistently held that where a joint return is filed, fraud on behalf of one spouse prevents the running of the statute of limitations as to both spouses even though one spouse is relieved of the fraud additions under the provisions of section 6653(b). Hicks Co. v. Commissioner,56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972). Conditional Nature of Forms 872
We now consider whether petitioners' execution of the Forms 872 was conditional in nature. Respondent does not deny that the condition contained in the Batzel March 21st letter was not met. He simply alleges it did not set forth the agreement respondent's agent had with petitioner: that the IRS would attempt to transfer the case. He goes on to allege that it was a condition of no consequence since the audit was essentially completed in any event. *90 The Forms 872 sent by respondent to petitioners are the standard two page forms listing petitioners' names and address, the type of tax, the tax periods covered, and the expiration date of the extension of time to assess tax. On the back page there are lines for petitioners' signatures and date as well as for signature and date of the person signing on behalf of respondent. Slightly less than one-third of the form is blank on the first page. There are no marks or other notations on the Forms 872 indicating any restrictions or other agreements by the parties. The printed form contains no reference to restrictions or conditions. When a taxpayer alleges that assessment is barred by the statute of limitations and makes a prima facie case by proving the filing date of the income tax return and the expiration of the statute of limitations period prior to the mailing of the notice of deficiency, the burden of going forward with the evidence shifts from the taxpayer to respondent. Robinson v. Commissioner,57 T.C. 735, 737 (1972). Respondent may discharge this burden by showing *91 that in some manner the running of the period was suspended, such as showing the filings of the petitions to quash summons or that the parties executed a written consent, valid on its face, extending the period of limitation for assessment, and that the notice of deficiency was mailed prior to the expiration of the extended period. Adler v. Commissioner,85 T.C. 535, 540-541 (1985). If respondent introduces an apparently valid consent and the taxpayer asserts that such consent is ineffective, the taxpayer again has the burden of going forward to affirmatively show the invalidity of the written consent. Crown Willamette Paper Co. v. McLaughlin,81 F.2d 365 (9th Cir. 1936); Concrete Engineering Co. v. Commissioner,19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932). Petitioners maintain that the March Batzel letter limited the scope of the consent. A consent to extend the period of limitations on assessment is not a contract but is a unilateral waiver of the taxpayer's defense on such ground. Stange v. United States,282 U.S. 270 (1931); *92 Kronish v. Commissioner,90 T.C. 684, 693 (1988); Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983); Tallal v. Commissioner,77 T.C. 1291 (1981). Thus, for example, no consideration is necessary to give validity to such a consent. See United States v. Gayne,137 F.2d 522 (2d Cir. 1943). Nevertheless, section 6501(c)(4) requires that the parties reach written "agreement" regarding the extension. The section refers only to time and it leaves the parties free to decide for themselves the terms governing the extension. Pursell v. Commissioner,38 T.C. 263, 278 (1962), affd. per curiam 315 F.2d 629 (3d Cir. 1963). Consequently, contract principles are significant in reviewing a written extension agreement under section 6501(c)(4). Piarulle v. Commissioner,80 T.C. at 1042. Petitioners bear the burden of proving that the Batzel letter was a part of their agreement with respondent. United States v. Gurley,415 F.2d 144, 147 (5th Cir. 1969); Rules 39, 142(a). Respondent argues that the condition stated by Ms. Batzel in the cover letter was of *93 no significance since the audit, in effect, had been completed in Connecticut. Respondent's own witnesses have testified that they never advised Ms. Batzel that the audit had been completed although they had several telephone conversations with her about transferring the audit to California. Further, they made an attempt, albeit unsuccessful, to transfer the audit to California. Lastly, revenue agent Sandel testified that subsequent to the date he thought he had completed the audit, he communicated with petitioner's accountant in Los Angeles requesting further documentation. Although a report of the revenue agent was in the file when Ms. . Houghton received the case for review in January 1986, that report was not approved. On August 15, 1986, the case was returned to the audit staff with a request for additional factual information. The new report indicating income tax examination changes by the revenue agent was dated October 8, 1986. That report was attached to the 30-day letter dated February 5, 1987, which was sent to petitioners. We are not willing to consider that the condition was meaningless under this set of facts. Further, we are completely unwilling to assume that *94 Ms. Batzel would have executed the consent forms had she been in command of the facts regarding the audit status which respondent knew but for unexplained reasons chose not to impart to her. Here, unlike the situation in our recent opinion in Ribb v. Commissioner,T.C. Memo. 1988-379, there is no question that the IRS received the letter transmitting the Forms 872 and containing the conditional language. The letter accompanied the Forms 872 which Ms. Batzel executed. [3] Indeed, the original of the letter was contained in their files. Somehow, within the Internal Revenue Service's offices in Hartford, it became separated from the consent forms. Ms. Houghton cannot recall whether or not she saw it. Mr. Mann is certain that he did not see it. We believe Mr. Mann's testimony that he would not have executed the forms without seeking guidance from District Counsel had the condition in the Batzel letter been on the face of the form. We also believe his testimony that he could not force the Los Angeles district of IRS to accept the transfer and that the most he could do, and did do, was to attempt the transfer. Mr. Mann and Ms. Batzel, on behalf of petitioners, obviously *95 never came to a meeting of the minds on this matter. Petitioners executed conditional waivers and they cannot be faulted for respondent's failure to read the conditions in the cover letter. We have located only one early case in which we have directly held *96 that a condition contained in a letter accompanying executed consents may serve as conditions or restrictions to the consents to extend the statute of limitations. In Windfall Grain Co. v. Commissioner,23 B.T.A. 725 (1931), the taxpayer executed a "Tax Collection Waiver" which was accompanied by a letter to the Collector of Internal Revenue. The letter conditioned the waiver to extend only to rights the Commissioner already had as of the waiver date. At the time of the alleged waiver, litigation was pending in the Supreme Court regarding the limitations period for collection of certain taxes. Russell v. United States,[4]278 U.S. 181 (1929). The Commissioner argued that the waiver executed by taxpayer served to revive the Commissioner's rights. We held in Windfall Grain Co. v. Commissioner, supra at 730: That the petitioner did not intend to revive a right to collect a tax at that time barred by the statute of limitation, is manifest from the explicit terms of the letter which accompanied the alleged waiver. By accepting that alleged waiver, limited as it was by the accompanying letter, the collector and the Commissioner *97 were fully informed of petitioner's purposes and intent, were not in any manner misled, and lost no right which the Government then possessed. Under such circumstances, to hold that the document did revive the cause of action would be imputing to it a meaning wholly repugnant to its explicit terms. That the letter accompanying the alleged waiver formed a part of that document, and should be considered in connection with it, is fully authorized, as is clearly indicated in Ruling Case Law, vol. 6, p. 850, par. 240, and cases therein cited. When we look to other authority, we find that the basic question is whether the parties came to a meeting of the minds in regard to the execution of the consents. In considering this matter we keep in mind that the Forms 872, drafted by respondent, do not have a provision contained in their body that any conditions *98 to them must be on the forms. Neither have the parties called to our attention any regulation, ruling, or instruction sheet which so states. Thus, we must determine whether these parties had a meeting of the minds in the written execution of the consents. See sec. 301.6501(c)-1(d), Proced. and Admin. Regs. Ms. Batzel placed her terms and conditions in writing. Mr. Mann reviewed the consent form without the cover letter containing conditions. He then executed the consent form. He clearly thought that he was agreeing on behalf of respondent to something which was quite different from that which Ms. Batzel had agreed to on behalf of petitioners. In Tallal v. Commissioner, supra at 1294, the taxpayer had signed an unrestricted Form 872-R. However, the taxpayer maintained that it was invalid because he executed it on the condition that his former wife also execute it and the Form 872-R did not contain her signature. In holding that the Form 872-R was valid, this Court stated: Nothing on the face of the consent states that Mr. Tallal was signing it on the condition that his former wife's signature to the consent be obtained. The consent is a written document. *99 Had Mr. Tallal written on the Form 872-R that his granting of the extension of time for assessment and collection of the tax was conditioned on the signature of his former wife being obtained, we would have a different case, and we are not here deciding such a case. This record does not show that the revenue agent made any commitment to Mr. Tallal to obtain his former wife's signature. * * *. See United States v. Stewart,311 U.S. 60 (1940). Cf. Boulez v. Commissioner,76 T.C. 209, 213-214 (1981). [77 T.C. at 1294.] Obviously, respondent can not be held to know that which is not in writing, but only in the mind of the taxpayer. Tallal, however, is a far different case from the one at bar. Here, Ms. Batzel did place the conditions to granting the extension in writing. She cannot be held responsible for the fact that somehow in the hands of respondent's employees the written conditions to the consents became separated from the consent forms. Respondent argues that Tallal stands for the proposition that the conditional language must be placed directly on the Form 872 itself. We disagree. It simply states the *100 proposition that the conditions must be in writing and here Ms. Batzel did make them in writing. Somewhat akin to Tallal is our recent opinion in Kronish v. Commissioner, supra, where we held the taxpayer to be bound by the terms of the Form 872 consent she executed, even though she was under the mistaken belief that it conformed to the terms her attorney had desired. We stated in Kronish v. Commissioner, supra at 693: It is the objective manifestation of mutual assent as evidenced by the parties' overt acts, not the parties' secret intentions, that determines whether the parties have made an agreement. 1 S. Williston, Contracts, secs. 22 and 35 (3d ed. 1957); 1 Restatement, Contracts 2d, sec. 19 (1979); Pimpinello v. Swift & Co.,253 N.Y. 159, 162-163, 170 N.E. 530, 531 (1930). In the instant case, petitioner intentionally signed the first consent form, and thereby manifested her assent to terms contained in that form. Here, petitioners' objective manifestation of assent was contained in the Batzel conditional cover letter to the Forms 872. [5]
*101 We also distinguish Sager v. Commissioner,T.C. Memo. 1988-193, where taxpayers received an unexecuted Form 872-A from respondent which was unrestricted. Respondent's transmittal letter accompanying the unexecuted original referred to a waiver of the statute of limitations for only specific items. Since the taxpayers intentionally signed the Form 872-A with no language limiting its terms on either the face or back of the form (as did respondent) we found that it manifested their consent to the nonconditional terms contained therein. We also considered a cover letter from taxpayers transmitting a Form 872-A in Scheuerman v. Commissioner,T.C. Memo. 1984-160, where the taxpayers contended their consent was invalid because respondent physically separated the cover letter from the consent. The taxpayers' argument was that respondent had unilaterally altered the consent form without the agreement of the taxpayer. In reviewing the taxpayers' cover letter we held that it did not constitute a statement of conditions to the consent and there was nothing in it which conflicted with the terms of the consent. We accordingly held that the mere act of *102 removing the letter from the consent did not alter it. The obvious implication of our opinion in Scheuerman is that the result would have been different if, as in the case at bar, the cover letter in fact contained conditions to the consent. We hold that the Forms 872 are invalid, the conditions imposed by petitioners to the execution of the consents not having been met. Equitable Estoppel
Respondent argues that equitable estoppel should prevent petitioners from claiming the bar of the statute of limitations. We stated the circumstances under which equitable estoppel would apply in Piarulle v. Commissioner,80 T.C. 1035 (1983). In Piarulle, the taxpayers executed consent Form 872 covering their 1974, 1975, and 1977 taxable years. Prior to executing the form, respondent, without the consent of the taxpayers, altered it by striking out the reference to the 1977 taxable year. We held that the Form 872 was invalid in that the Form 872 accepted and executed by respondent was materially different than the consent executed by taxpayers. See also Cary v. Commissioner,48 T.C. 754 (1967), where we held that respondent's alteration of *103 a Form 872 after it was executed by the taxpayers served to render the consent invalid. In Piarulle, respondent went on to allege that he reasonably relied on the validity of the consent and that the taxpayers were under a duty to advise respondent that they believed the consent to be invalid and that they failed to do so. We stated the circumstances for equitable estoppel as follows (p. 1044): A taxpayer may be estopped to deny the validity of an agreement to extend the period of limitations where the Government reasonably relies upon waivers executed by the taxpayer. Benoit v. Commissioner,25 T.C. 656 (1955), affd. 238 F.2d 485 (1st Cir. 1956). The circumstances required for equitable estoppel to apply are: (1) there must be false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an *104 estoppel is claimed. [Lignos v. United States,439 F.2d 1365, 1368 (2d Cir. 1971).] None of these circumstances is present. Ms. Batzel's August 15, 1986, letter, as well as earlier telephone conversations with Mr. Mann, indicate the exact opposite of misleading silence. As of the date of that letter Ms. Batzel informed respondent of the conditional nature of the consents. Had respondent's employees paid any attention to her letter which they had received at least as early as August 26, 1986, or to her earlier telephone conversations, the notice of deficiency could have been issued well prior to the expiration of the statute for each year except 1982. The errors in this case were those of respondent. We see no basis to an estoppel of petitioners. The issuance of the notice of deficiency as to the year 1978 is barred by the statute of limitations as to both petitioners unless respondent proves fraud for that year as to Ralph Smith and it is also barred as to the years 1979, 1980, and 1982. An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. Respondent limited the liability of petitioner Jeanne K. Smith to the amount of the deficiency. ** 50% of the interest due on the entire tax deficiency.↩
2. Respondent has determined an addition to tax for fraud against only petitioner Ralph Smith for the year 1978.↩
3. We reject completely respondent's argument on brief after the hearing that petitioners had not proved that the March Batzel letter accompanied the Forms 872. First, it clearly was a cover letter for the forms. Second, we believe Ms. Batzel's testimony that it accompanied the forms. Third, respondent's Memorandum of Law in Support of His Objection to Petitioner's Motion to Dismiss filed prior to the hearing herein, agreed that the Batzel letter accompanied the forms. Fourth, it is uncontroverted that the letter was in respondent's administrative file. Respondent was given the opportunity to supplement the record if he located an envelope which might have contained the Forms 872 and/or the Batzel letter. He did not file such a supplement. If the letter arrived separately, such information should have been available to respondent, who made no attempt, other than futile argument, to present proof of his allegation.↩
4. The Revenue Act of 1921 limited the time under which taxes imposed by the Act of 1918 might be assessed to five years. Sec. 278 of the Revenue Act of 1924, 43 Stat. 253, however, provided that where assessment was made within the five-year period, suit might be brought for collection within six years of the assessment.↩
5. We do no discuss our opinion in Schwotzer v. Commissioner,T.C. Memo. 1986-161↩, in this regard as that opinion was vacated by Order dated July 17, 1986.