ROBERT P. VROOMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vrooman v. Commissioner
Docket No. 29110-88.
United States Tax Court
T.C. Memo 1992-149; 1992 Tax Ct. Memo LEXIS 167; 63 T.C.M. (CCH) 2379; T.C.M. (RIA) 92149; March 16, 1992, Filed *167 An order will be issued denying petitioner's motion. Robert P. Vrooman, pro se. Dale Kensinger, for respondent. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: This case is before the Court to decide a motion filed by petitioner in the nature of a motion for partial summary judgment. The sole issue for decision is whether the notice of deficiency was issued after the expiration of the period of limitations on assessments under section 6501(a) for the year 1983. All section references in this opinion are to the Internal Revenue Code, as amended. Resolution of this issue turns on whether the period of limitations was validly extended by agreement of the parties, pursuant to section 6501(c)(4). Petitioner's motion places at issue the validity of each of two consents to extend the time to assess tax executed on Internal Revenue Service Forms 872. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulation of facts, first supplemental stipulation of facts, and second supplemental stipulation of facts, together with the exhibits attached thereto, are incorporated herein by reference. Petitioner resided at Liberty, Missouri, *168 at the time the petition in this case was filed. Petitioner filed a timely individual income tax return for taxable year 1983 on August 15, 1984, after receiving an automatic 4-month extension of time to file. The return includes a Schedule C, Profit or (Loss) from Business or Profession, for a business identified as Shower-Mate. The schedule reports a net loss from the business in the amount of $ 112,500, consisting entirely of depreciation. Petitioner's 1983 return also includes a Form 4562, Depreciation and Amortization Schedule, which reports a depreciation deduction of $ 112,500 computed using the straight-line method with respect to specified Shower-Mate assets acquired on November 30, 1983. The form states that petitioner's cost or other basis in the assets is $ 1,575,000. Sometime later, petitioner filed an amended return for 1983 in which he reported $ 1,700,000 as his cost or other basis in the Shower-Mate assets. The record does not contain petitioner's amended return. Nevertheless, it appears that the amended return claims additional depreciation of $ 87,500. Therefore, petitioner's original and amended returns for 1983 claim aggregate depreciation of $ 200,000 *169 on the Shower-Mate assets. Petitioner also filed appropriate forms for taxable years 1980 and 1982 by which he carried back to each of those years a portion of the net operating losses claimed for 1983. Circa the middle of 1985, Revenue Agent Rick West reviewed petitioner's 1983 return in connection with an investigation into abusive tax shelters. Mr. West contacted petitioner at that time and made an initial decision to limit his examination of petitioner's 1983 return to the Shower-Mate deduction. Approximately 1 year later, on May 15, 1986, he wrote the following letter to petitioner: Dear Mr. Vrooman: I am conducting an examination of your 1983 and 1984 Forms 1040 and related Form 1045, Net Operating Loss Carryback, to tax years 1980 and 1982. This examination is limited to your investment in the Shower-Mate System and related net operating loss carrybacks. Please contact this office within ten (10) days of receipt of this letter to arrange an appointment. Also, leave a phone number where you may be reached during the day.
Throughout this opinion, we refer to the above document as the May 15, 1986, letter, or as Mr. West's letter. Prior to May 15, 1986, petitioner *170 had moved from Kansas City, Missouri, to Tampa, Florida. Therefore, shortly after receiving the May 15, 1986, letter, petitioner telephoned Agent West and requested transfer of the audit to Tampa, Florida. Petitioner also made written request to transfer the audit. On or about December 18, 1986, petitioner received an information request from an internal revenue agent in Tampa, Florida, Mr. Frank Bevvino. The information requested by Agent Bevvino was not limited to the Shower-Mate deduction. He asked for petitioner's books and records, bank records, and other information for the years 1983, 1984, and 1985. Petitioner telephoned Agent Bevvino and expressed concern about the fact that the information requested was not limited to the Shower-Mate deduction, as contemplated in Agent West's letter of May 15, 1986. Agent Bevvino explained that, in fact, he only intended to review the Shower-Mate depreciation deduction. Several weeks later, petitioner met with Agent Bevvino and gave to him a copy of Agent West's letter of May 15, 1986. During the meeting, they discussed only the Shower-Mate depreciation deduction. During the early part of 1987, Agent Bevvino asked petitioner to *171 agree to extend the period of limitations on assessments for 1983. Petitioner wrote to Agent Bevvino on March 4, 1987, and stated that he was "prepared to extend the limitation period for six months for the tax period ended December 31, 1983 with respect to my individual income tax, by signing Form 872-A." Form 872-A, Special Consent to Extend the Time to Assess Tax, is a form used to extend the period of limitations without a fixed expiration date. Petitioner was represented by an attorney, Mr. Steven Nilsson, at the time. Mr. Nilsson explained to petitioner that the policy of the Internal Revenue Service office in Jacksonville, Florida, was not to permit restrictive language to be placed on forms to extend the time to assess tax. On April 10, 1987, petitioner and Mr. Nilsson executed the Form 872-A which Agent Bevvino had sent to them. Petitioner instructed Mr. Nilsson to return the form along with a copy of Agent West's letter. Later, petitioner learned that Mr. Nilsson had failed to send Agent West's letter with the Form 872-A. Petitioner retained a new representative, Mr. Michael K. Zimmerman, a certified public accountant. On May 20, 1987, Mr. Zimmerman filed with respondent *172 Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax. This action had the effect of terminating the consent which petitioner had given by executing the Form 872-A, mentioned above. Thereafter, Agent Bevvino asked petitioner to execute Form 872, Consent to Extend the Time to Assess Tax, and to agree to extend the period of limitation until December 31, 1987, the end of the 6-month period referred to in petitioner's letter dated March 4, 1987. Petitioner and Mr. Zimmerman executed the Form 872 on June 16, 1987, and returned it to Agent Bevvino with a copy of Agent West's letter of May 15, 1986. Respondent executed the consent on July 1, 1987. On August 14, 1987, an engineer employed by respondent issued an engineering and valuation report in which he concluded that petitioner's purchase of "Shower-Mate patents, products and tooling is a transaction in form but without economic substance". The report recommends that the Shower-Mate assets be valued at zero. In October 1987, Mr. Bevvino again asked petitioner to extend the period of limitations with respect to this 1983 return. Petitioner and Mr. Zimmerman executed Form 872 on October 15, 1987, *173 agreeing to extend the period of limitations on assessments to December 31, 1988. Mr. Zimmerman returned the consent to Mr. Bevvino along with a copy of Agent West's letter dated May 15, 1986. This consent was executed on respondent's behalf on November 6, 1987. In April of 1988, at the direction of his supervisor, Agent Bevvino expanded the audit of petitioner's 1983 income tax return to items other than the Shower-Mate depreciation deduction. On April 21, 1988, he issued an information request to petitioner in which he asked for bank statements and other information unrelated to the Shower-Mate adjustments. On or about April 21, 1988, Agent Bevvino wrote to Mr. Zimmerman and enclosed a Form 872, to extend the period of limitations with respect to petitioner's return for 1984. Petitioner and Mr. Zimmerman inserted restrictive language on the Form 872 for 1984 before they returned it to respondent. The restrictive language stated that petitioner's consent was "limited to the patent valuation and depreciation reported on Schedule C and Form 4562." Respondent's agents did not execute the consent for 1984 because of the policy of the Jacksonville district office not to allow restrictive *174 language to be included on Forms 872. Shortly thereafter, respondent issued a notice of deficiency in which she determined deficiencies and additions with respect to petitioner's 1980, 1982, 1983, 1984, 1985, and 1986 returns. For 1983, respondent increased petitioner's taxable income by $ 218,402. Of that amount, $ 200,000 is the depreciation claimed by petitioner on the Shower-Mate assets and $ 18,402 is the amount of an unexplained deposit made into petitioner's account at the Mark Twain Bank in Kansas City, Missouri, which respondent treated as unreported income. OPINION The issue to be decided is whether the period of limitations on assessments, set forth in section 6501(a), was validly extended, pursuant to section 6501(c)(4), by each of two separate Forms 872, Consent to Extend the Time to Assess Tax. Chronologically, petitioner and his representative executed the first consent on June 16, 1987. It contemplated that any tax due on petitioner's 1983 return could be assessed on or before December 31, 1987. Petitioner and his representative executed the second consent on October 15, 1987. That consent contemplated that any tax due on petitioner's 1983 return could be *175 assessed on or before December 31, 1988. Both consents are unrestricted in the sense that neither of them contains language which limits or places restrictions on respondent's authority to assess tax during the extended period. Petitioner contends, notwithstanding the subject consents, that the period of limitations on assessments expired, without extension, prior to the date on which respondent issued the subject notice of deficiency. He argues, in the case of each of the consents, that there was no mutual assent to the terms of the agreement and that both consents are, accordingly, invalid. Alternatively, petitioner contends that "respondent is estopped from asserting the validity of such Form 872 consents because of the application of collateral estoppel". At the outset, we note that the bar of the statute of limitations is an affirmative defense. This is not a matter which goes to the jurisdiction of the Court. Petitioner preserved his right to raise the defense by setting forth in the petition his contention that the period of limitations barred assessment of tax with respect to his 1983 return. See Rule 39, Tax Court Rules of Practice and Procedure.
In these proceedings, *176 petitioner bears the burden of proving that defense. Adler v. Commissioner, 85 T.C. 535, 540 (1985). In order to prevail, petitioner must prove that one or the other of the consents is invalid, or he must prove all of the elements necessary to invoke the doctrine of equitable estoppel. E.g., Schulman v. Commissioner, 93 T.C. 623, 639 (1989); Kronish v. Commissioner, 90 T.C. 684, 692-693 (1988); Adler v. Commissioner, supra at 540. For the reasons set forth below, we hold that petitioner has failed to meet his burden of proving that the consent forms are invalid or that respondent should be estopped to deny their validity. Generally, in evaluating a taxpayer's claim that there was no mutual assent to extend the period of limitations as required by section 6501(c)(4), we look to the objective manifestation of mutual assent based upon the overt acts of the parties and not to their unexpressed intentions. E.g., Kronish v. Commissioner, supra at 693. In this case, petitioner executed two unrestricted consent forms and thus objectively manifested his assent to extend the period *177 of limitations without restriction. It is up to petitioner to prove that he manifested a different intent through other overt acts. Petitioner's position boils down to the contention that Mr. Zimmerman's act of returning each of the consents in an envelope which also contained a copy of Agent West's letter dated May 15, 1986, had the effect of unequivocally notifying respondent and his agents of petitioner's limited consent to extend the period of limitations. As described above, Agent West's letter states that the "examination is limited to your investment in the Shower-Mate System and related Net Operating Loss Carrybacks". Agent West's letter, however, says nothing about the period of limitations on assessments. Further, the letter says nothing about either of the consents which petitioner ultimately executed on June 16, 1987, and October 15, 1987. Agent West's letter establishes no link between the subject matter of the examination and the extension of the period of limitations. Therefore, we find nothing in Agent West's letter which can reasonably be construed to suggest that after expiration of the initial period of limitations for petitioner's 1983 return, respondent's *178 examination would continue to be limited to the Shower-Mate issue. This case is not like Hicks v. Commissioner, T.C. Memo. 1991-564. In that case, there was no restriction on the face of the Form 872, but the Commissioner's transmittal letter accompanying it stated that the work necessary to complete respondent's audit would be limited to the "Schedule E loss on your Hawaiian condo at Hanalei Bay Resort". We agreed with the taxpayers' contention that they had been induced to extend the period of limitations solely to allow the agent to complete an examination of the Hawaiian condominium issue. By contrast, in this case, Agent West's letter, written more than 1 year before the first consent was requested by a different agent, provides no basis to find that petitioner was induced to believe that the audit would be restricted to the Shower-Mate issue. Significantly, petitioner did not send either of the unrestricted consents to respondent with a cover letter setting forth an intention to restrict his waiver to the Shower-Mate adjustments. Neither did his representative, Mr. Zimmerman. In fact, there is nothing in petitioner's testimony or elsewhere in the record *179 of this case to show that either petitioner or his representative clearly advised respondent of petitioner's intention to restrict his consent in such a way. Thus, this case is not like Smith v. Commissioner, T.C. Memo. 1989-87. In that case, the taxpayer's attorney returned a consent to extend the period of limitations with a transmittal letter which expressly conditioned the waiver on the transfer of the audit to a different office of the Internal Revenue Service. We invalidated the consent because the taxpayer's objective manifestation of assent was subject to a condition which had not been met. We hold that the simple act of sending Agent West's letter to respondent in the same envelope with the executed consent forms was not sufficient to objectively manifest an intention to restrict petitioner's waiver to the Shower-Mate deduction. If petitioner harbored any such intention in executing the subject Forms 872 on June 16, 1987, and October 15, 1987, it was not expressed by sending Agent West's letter to respondent. Accordingly, petitioner has failed to prove that either of the subject Forms 872 lacked mutual assent to the unrestricted terms set forth therein. *180 E.g., Kronish v. Commissioner, supra at 693-695; Tallal v. Commissioner, 77 T.C. 1291, 1294 (1981); Conway v. Commissioner, T.C. Memo. 1990-589. We turn to petitioner's alternative contention that respondent is estopped from denying the invalidity of the subject consent forms. One of the essential elements which must be shown in order to invoke the doctrine of equitable estoppel against respondent is the existence of a false representation or wrongful, misleading silence by respondent or her agents. E.g., Kronish v. Commissioner, supra at 695; Piarulle v. Commissioner, 80 T.C. 1035 (1983). Regarding this element, petitioner states as follows: Respondent falsely stated that the audit of petitioner's 1983 income tax return would be restricted to his investment in Sower-Mate [sic] Systems and respondent, in furtherance of such false statement, maintained wrongful misleading silence as to respondent's intent to disregard the restrictive covenants contained in the May 15 1986 letter which formed a part of his 1982 consents notwithstanding that respondent admits that such *181 letter accompanied the consents.
Contrary to petitioner's statement, the fact of the matter is that Agent West limited his examination of petitioner's 1983 return to the Shower-Mate deduction and Agent Bevvino did the same. It was not until April of 1988, after both of the subject consents had been obtained, that Agent Bevvino, at the direction of his supervisor, expanded the audit to include other items. It appears that petitioner and his representative became immediately aware of this change for, at that point, Mr. Zimmerman inserted restrictive language on the Form 872 which Agent Bevvino asked petitioner to execute for 1984. We see nothing in these facts to suggest that respondent or her agents made a false representation or wrongful, misleading silence. To hold otherwise is to suggest that the Commissioner and her agents should be penalized for following leads developed during a taxpayer's examination. For the foregoing reasons, An order will be issued denying petitioner's motion.