**UNITED STATES of America, Plaintiff,**

v.

**Barry J. HODGEKINS, Defendant.**

**Cause No. S91–530M.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 11, 1992.

Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., Peter Sklarew, Douglas W. Snoeyenbos, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Stephen A. Seall, Gerald F. Lutkus, Barnes & Thornburg, South Bend, Ind., for defendant.

---

## MEMORANDUM AND ORDER

MILLER, District Judge.

In the second and third quarters of 1985 Josam Manufacturing, Inc. ("Josam") failed to pay all the taxes deducted from its employees' payroll. The United States brought this action against Barry J. Hodgekins pursuant to 26 U.S.C. § 6672, seeking $793,162.96 for Josam's tax liability. Mr. Hodgekins now seeks summary judgment, claiming that the statute of limitations in 26 U.S.C. § 6501(a) bars this action. Mr. Hodgekins also seeks summary adjudication of summary judgment motion because the government's response brief was not timely filed, and an order striking the untimely brief. Finally, the government moves for leave to file a rebuttal brief in opposition to summary judgment or, in the alternative, for an order striking portions of Mr. Hodgekins' reply brief.

### I.

Before addressing the merits of the summary judgment motion, the court turns to the motion for summary adjudication and the motion to strike.

### A.

Following the April 20 telephonic pretrial conference, the court set forth a briefing schedule embodied in the Memorandum of Status Conference and Scheduling Order:

> Following discussion, the court directed that the defendant's summary judgment motion based on waiver and statute of limitations be filed by May 13, 1992, with the plaintiff's response being due by June 8, 1992, and any reply being due seven days thereafter. A telephonic hearing on that motion was scheduled for July 16, 1992 at 9:00 a.m. (E.S.T.), with the court to establish the call.

Counsel who briefed the pending motions represented the parties at the hearing.

Mr. Hodgekins' summary judgment motion was filed on May 13. On June 9, after ascertaining that the government had not filed a response on June 8, Mr. Hodgekins moved for summary adjudication of the motion for summary judgment pursuant to Fed.R.Civ.P. 56(e) and District Rules 9(a) and 11. The government's response arrived and was filed on June 10, and Mr. Hodgekins moved to strike the response as untimely.

A party moving for summary judgment is entitled to summary judgment when the movant demonstrates that no genuine issue of fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Once the movant makes such a showing, the burden shifts to the opposing party to demonstrate the existence of a genuine issue. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Sims v. Mulcahy*, 902 F.2d 524, 540 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If the oppos-

ing party fails to do so, the court should enter summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Under this standard, Mr. Hodgekins claims that he has demonstrated the absence of a genuine issue, and the government has failed to come forward with evidence that any facts are in actual dispute.

Under District Rule 9(a):

Failure to file an answer brief or reply brief within the time prescribed shall be deemed a waiver of the right to make such filing and shall subject the motion to summary ruling.

District Rule 11 provides that:

[T]his Court will presume that the facts as claimed by the moving party are admitted to exist without controversy, except as and to the extent that such facts are actually in good faith controverted in the "statement of genuine issues" filed in opposition to the motion....

Mr. Hodgekins asks the court to apply these rules and determine the summary judgment motion without reference to the government's response.

The government's counsel states that it was his understanding that the court's use of the term "due" meant that he was allowed to serve his response by mail on June 8. He contends that his response was timely, and, alternatively, that his untimely response resulted from a good faith misinterpretation of the court's memorandum and constituted "excusable neglect" within the meaning of Fed.R.Civ.P. 6(b)(2) ("the court for cause shown may at any time in its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect"). The government's counsel further states that he recalls advising the court during the April 20 status conference that he would need to work on the response during the weekend falling on June 6 and 7, and that he believed the court understood that he would not be mailing the motion until June 8. The government's

counsel is apparently mistaken, however, for the court reporter's notes reveal no exchange of this nature.

The government claims that under Fed. R.Civ.P. 5(d), in absence of an order for filing by a date certain, compliance with deadlines is measured by service of papers. Rule 5(d) provides that "[a]ll papers after the complaint required to be served upon a party, together with a certificate of service, shall be filed with the court within a reasonable time after service...."

It appears plausible that the government's counsel could have been confused by the wording of the memorandum, although the court interprets "due" to mean that the response should have been filed with the court on the date due. The government did not ignore its obligation to respond, however, and striking a response mailed, but not filed, on the date is a heavy-handed remedy. Accordingly, the court declines to strike the government's response. In the future, any order stating that a paper is "due" by a date certain means that the paper must be filed with the clerk's office by the close of business on that date.

#### B.

■ The government seeks leave to file a rebuttal brief on the following grounds: (1) the reply and affidavits raise new arguments that the government could not have anticipated; (2) the reply goes beyond the scope of the government's response; (3) the reply cites cases the government has not had an opportunity to address; (4) the discussion of the cases cited in the reply is misleading, one case is cited for a proposition it does not support, and one case cited is not on point; (5) the reply mischaracterizes the government's arguments; (6) the reply falsely asserts that the government made certain admissions and supports this assertion with selective quotations from the response; and (7) the reply suggests impropriety by the government's counsel.

The court believes that it can ascertain from a reading of the initial, response, and reply briefs those cases which support the parties' arguments without further enlightenment from the government's rebuttal

brief. The court also finds it unnecessary to look to a rebuttal to determine whether the government has made admissions in its response and whether the reply raises new arguments.

Judicial economy requires that the briefing on this motion stop at some point. Both parties have had an adequate opportunity to make their arguments, and the court will not entertain further briefing. In addition, the court will not strike any portions of the reply brief.

## II.

■ Mr. Hodgekins seeks summary judgment in his favor, claiming that the statute of limitations bars this action. Mr. Hodgekins began working for Josam in August 1984, and was assigned to supervise the transfer of Josam's productions facilities. He owns no Josam stock and claims to have no responsibility over tax or financial matters.

Josam filed a bankruptcy petition on August 31, 1985. On November 25, 1985, the Internal Revenue Service ("IRS") proposed a 100% tax penalty assessment against Mr. Hodgekins in the amount of $544,660.96, reflecting federal employment taxes allegedly withheld but not paid by Josam in the second quarter of 1985. The IRS proposed a second 100% penalty assessment of $302,526.92 for the third quarter of 1985.

Mr. Hodgekins filed a protest to the proposed assessments on January 30, 1987, and reached a settlement with the Indianapolis appeals office of the central region of the IRS, through Ted Dreiser, an IRS appeals officer in South Bend. The parties agreed that the case should be closed without the assessment of the proposed 100% penalty.

Pursuant to the agreement, Mr. Hodgekins executed IRS Form 2750, entitled "Waiver Extending Statutory Period for Assessment" and IRS Form 2751, entitled "Proposed Assessment of 100 Percent Penalty." The parties stipulated that the total penalty to be assessed was "none". A clause on the reverse side of Form 2751 read:

It is being recommended that your case be closed without the assessment of the 100 percent penalty at this time. Your case is subject to reopening at the request of the Department of Justice in the event refund litigation is initiated and it is decided to interplead potentially responsible persons.

Mr. Hodgekins' attorney sought to modify this clause, but Mr. Dreiser informed him that the IRS forms could not be changed. Mr. Hodgekins therefore executed the waiver with the understanding that it would not be changed. He also understood that the clause was necessary only in the event that any witnesses changed their stories with respect to Josam's taxes. Mr. Hodgekins believed that he waived the statute of limitations only if another person connected with Josam filed a refund action and the government added all potentially responsible persons as defendants in that action.

Mr. Dreiser signed Forms 2750 and 2751 on March 14, 1988. Ten days later, John Marvel, Associate Chief of the IRS Appeals Office, informed Mr. Hodgekins by letter that his settlement had been approved. Mr. Marvel further reiterated the condition that the case was subject to reopening "in the event litigation is initiated and it is decided to interplead potentially responsible persons."

In December 1986, the IRS proposed a 100% penalty against another Josam employee, Jerrell Barnhill, for the same tax liability. Mr. Barnhill mailed the IRS checks in an amount representing the tax liability for one employee during each tax period, and sought a refund. After the IRS rejected his refund request, Mr. Barnhill brought suit on June 26, 1989 for a refund and an abatement of the penalty assessed against him. *Barnhill v. United States v. Security Pacific Credit, Inc.,* S89–286. The government filed an answer and counterclaim and a third-party complaint against Lewis Polster on August 29, 1989. On November 11, 1989, the court entered a scheduling order in *Barnhill* requiring amendment of pleadings and joinder of parties by December 18, 1989. The

December 18 deadline passed without a motion to add Mr. Hodgekins as a party.

During a May 11, 1990 pretrial conference in *Barnhill,* the court extended the deadline for discovery and scheduled trial for September 24, 1990. The government gave no indication that it would seek to add Mr. Hodgekins as a party. On August 16, 1990, the court granted Mr. Barnhill's motion to continue the trial. During a November 2, 1990 pretrial conference, the government was given until December 3, 1990 to amend its counterclaim.

On December 3, 1990, the government filed an amended answer and counterclaim in *Barnhill,* adding Elinor G. Polster, Executrix of the Estate of Lewis B. Polster, and Security Pacific Credit, Inc. ("Security Pacific"). The government informed the court during a January 18, 1991 pretrial conference that its claim against Ms. Polster would be dismissed. The government made no mention of an intention to add Mr. Hodgekins as a party.

A March 22, 1991 pretrial conference was held with no mention of an intention to add Mr. Hodgekins as a party. Another pretrial conference was held on August 1, 1991, during which the court extended the discovery and dispositive motion deadlines to October 22, 1991. No mention was made of an intention to add Mr. Hodgekins as a party.

On October 4, 1991, the government moved for leave to amend to add Mr. Hodgekins as a third-party defendant in *Barnhill.* Mr. Barnhill and Security Pacific opposed the motion, and the court denied it as untimely on October 24, 1991. On April 8, 1992, the third day of the *Barnhill* trial, the court dismissed the government's case and entered judgment in favor of Mr. Barnhill and Security Pacific because of conduct of the government's counsel.

On October 25, 1991, the government filed this suit against Mr. Hodgekins, and Mr. Hodgekins answered the complaint on January 6, 1992, asserting affirmative defenses, including the statute of limitations.

Mr. Hodgekins claims that the pertinent statute of limitations, 26 U.S.C. § 6501(a),

bars this action. That subsection reads in part:

> Except as otherwise provided in this section, the amount of any tax imposed ... shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

Therefore, an action pursuant to § 6672 would have to be filed within three years of the date of the filing of the return. Subsection (b)(2) of § 6501 states when a tax return is deemed filed.

> **Return of certain employment taxes and tax imposed by chapter 3.**—For purposes of this section, if a return of tax imposed by chapter 3, 21, or 24 for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such calendar year.

Mr. Hodgekins claims that Josam's returns were timely filed by April 15, 1986, and were deemed filed by April 15, 1986. The statute of limitations, therefore, ran until Monday, April 17, 1989. Paragraph 15 the complaint in this action states that the assessment upon which this suit is based was made on October 7, 1991. The government represents that no court ever has held § 6501(a) applicable to assessments under § 6672, but concedes that its policy is to apply the three-year period, and reports its willingness to do so in this case.

By executing Forms 2750 and 2751, Mr. Hodgekins waived his statute of limitations defense, but he claims that the waiver applied to a limited set of circumstances not present in this case.

Under 26 U.S.C. § 6501(c)(4), the parties may waive the statute of limitations by agreement.

> Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, ... both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed

at any time prior to the expiration of the period agreed upon. The period so agreed may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

Mr. Hodgekins states that under this provision both parties must agree to the period in which the waiver would run. He argues that the waiver to which the parties agreed is limited to situations in which a refund action is filed and the government interpleads potentially responsible parties into that refund action pursuant to Fed.R.Civ.P. 22. Because this action is against Mr. Hodgekins alone, Mr. Hodgekins claims that the waiver is not effective.

The government claims that during the course of discovery in the *Barnhill* case, its counsel learned facts that increased support for holding Mr. Hodgekins liable under § 6672. On October 2, 1991, the government's trial attorney recommended to the IRS that Mr. Hodgekins be assessed so the government could bring him into the *Barnhill* case. The government sought leave to add Mr. Hodgekins on October 3, 1991, and assessed a penalty against him on October 7. On October 25, the day after the court denied the motion to amend in the *Barnhill* case, the government filed this suit.

■ The government acknowledges that Mr. Hodgekins' answer included a list of affirmative defenses, and among the affirmative defenses was the statement that "Plaintiff's complaint is barred by the statute of limitations." Mr. Hodgekins did not refer to Form 2751 in his answer. The government's trial attorney assumed this "boilerplate" affirmative defense was meritless. Following the filing of this action, the government's counsel asked Mr. Hodgekins' counsel if he would agree to consolidate this case with *Barnhill,* but Mr. Hodgekins' counsel declined. The government argues, therefore, that Mr. Hodgekins' strategy was to lay in wait and spring this limitations defense upon the government when it was too late for Mr. Hodgekins to be joined in the *Barnhill* case. For this reason, the government argues that Mr. Hodgekins should be estopped from asserting the statute of limitations defense at this stage.

The court agrees with Mr. Hodgekins that the government should not have assumed that his pleading violated Fed. R.Civ.P. 11. Mr. Hodgekins was not required to set forth his argument in support of his affirmative defense in his answer. Form 2751 was in the government's file and available for counsel's inspection. The parties' joint status report, prepared in the government's office, referred to the statute of limitations defense. Mr. Hodgekins' counsel recalls a conversation with the government's counsel in which the government's counsel asked whether Mr. Hodgekins' counsel was serious about asserting the limitations defense. The government's counsel recalls no such conversation, but Mr. Hodgekins' counsel sent the government a letter noting the condition in the waiver.

The government argues that Mr. Hodgekins actually relies on an unpleaded estoppel defense, and cites *Kennedy v. United States,* 965 F.2d 413 (7th Cir.1992), as authority for the insufficiency of such an argument. Had the three-year limitations period not expired, Mr. Hodgekins would have been reduced to arguing estoppel, and *Kennedy* might have precluded such an argument. Mr. Hodgekins relies, however, on the limitations period by way of defense, not estoppel.

The government also argues that Mr. Hodgekins is estopped from asserting the limitations defense, but the court finds no basis for estoppel against Mr. Hodgekins. He has maintained consistently that the waiver was conditional and he has not misled any parties or the court as to his theory of this case. Although he refused to agree to consolidate this case with *Barnhill,* he was asked to do so long after the deadline for amendments in *Barnhill.*

The government claims that Mr. Hodgekins' motion is not based on the statute of limitations, but in fact on a "purported" condition on the assessment, regardless of when it is made. Form 2750 explicitly extends the limitations period to April 15,

1994, and it refers to no other document, including Form 2751, which contains the condition upon which Mr. Hodgekins relies. Only Mr. Hodgekins signed Form 2751.

■ The government suggests that because Form 2750 is complete on its face and Form 2751 was not executed by the government, Form 2751 should not be construed as part of the waiver of the statute of limitations on assessment. The government also argues that § 6501(c)(4) does not enable parties to attach nontemporal procedural restrictions on the timing of assessments. Mr. Hodgekins notes that under § 6501(a) neither an assessment nor a tax collection suit without an assessment may be allowed beyond the limitations period absent a waiver.

■ Mr. Hodgekins acknowledges that he has the burden of proving non-liability. He must demonstrate a *prima facie* case by showing the filing of a statutory return and the expiration of the statutory period. After he does so, the government must come forward with countervailing evidence. *Lorie v. Commissioner*, 21 B.T.A. 612, 613–14 (1930), *acq.*, x–2C.B.43. In *Adler v. Commissioner*, 85 T.C. 535, 540 (1985), the tax court explained the shifting burden of proof of a statute of limitations defense.

> The bar of the statute of limitations is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof with respect thereto.... Where the party pleading such issue makes a showing that the statutory notice was issued beyond the normally applicable statute of limitations, however, such party has established a prima facie case. At that point, the burden of going forward with the evidence shifts to the other side, and the other party has the burden of introducing evidence to show that the bar of the statute is not applicable. Where the other party makes such a showing, the burden of going forward with the evidence then shifts back to the party pleading the statute, to show that the alleged exception is invalid or otherwise not applicable. The burden of proof, i.e., the burden of ultimate persuasion never shifts from

the party who pleads the bar of the statute of limitations.

Mr. Hodgekins notes that although waivers are not contracts, contract principles are applied in interpreting them. *Piarulle v. Commissioner*, 80 T.C. 1035, 1042 (1983) ("Contract principles are significant, however, because section 6501(c)(4) requires that the parties reach a written agreement as to the extension. The term 'agreement' means a manifestation of mutual assent."). The government drafted the waiver language and forbade its modification, and this language should be construed against the drafter if any ambiguity exists.

Mr. Hodgekins cites several cases to support the contention that waivers must be strictly interpreted against the government. In *Windfall Grain Co. v. Commissioner*, 23 B.T.A. 725 (1931), *acq.*, x–2C.B.77, the taxpayer and the government disagreed over whether the applicable limitations period was three years or six years. The taxpayer signed a waiver that stated that the Commissioner of Internal Revenue may collect the taxes in dispute any time prior to December 31, 1929. The taxpayer forwarded a letter with the waiver stating in part:

> In order to prevent our property from being seized ... we have executed and enclose herewith, under protest, the tax collection waiver which was demanded, which, however, is being given to you and accepted by you with the understanding that if the right or power of the Commissioner of Internal Revenue to collect said taxes has heretofore expired ... the execution and delivery of said tax collection waiver shall not operate to revive such right or power in the Commissioner, but shall operate merely to extend the rights or powers which the Commissioner of Internal Revenue already has.

*Windfall Grain Co. v. Commissioner*, 23 B.T.A. at 728. The court determined that the waiver operated only to continue whatever power the Commissioner already had, and not to revive any right that had expired by the time of the waiver. Therefore, after the Board of Tax Appeals decid-

ed that the three-year limitations period applied, the Commissioner could not use the waiver to avoid the effect of the shorter limitations period.

That the petitioner did not intend to revive a right to collect a tax at that time barred by the statute of limitation, is manifest from the explicit terms of the letter which accompanied the alleged waiver. By accepting that alleged waiver, limited as it was by the accompanying letter, the collector and the Commissioner were fully informed of petitioner's purposes and intent, were not in any manner misled, and lost no right which the Government then possessed.

Under such circumstances, to hold that the document did revive the cause of action would be imputing to it a meaning wholly repugnant to its explicit terms. That the letter accompanying the alleged waiver formed a part of that document, and should be considered in connection with it, is fully authorized....

*Windfall Grain Co. v. Commissioner*, 23 B.T.A. at 730.

In *Smith v. Commissioner*, T.C. Memo. 1989–87, the court determined that the consent forms the taxpayers had signed waiving the statute of limitations were not valid because they were subject to a condition, even though the condition was stated in a cover letter and not in the consent forms themselves. The condition, the government's transfer of an audit from Connecticut to California, did not occur, and the court determined that the waiver was not effective.

A consent to extend the period of limitations on assessment is not a contract but is a unilateral waiver of the taxpayer's defense on such ground. Thus, for example, no consideration is necessary to give validity to such consent. Nevertheless, section 6501(c)(4) requires that the parties reach written "agreement" regarding the extension. The section refers only to time and it leaves the parties free to decide for themselves the terms governing the extension. Consequently, contract principles are significant in reviewing a written extension agreement under section 6501(c)(4). Petitioners bear the burden of proving that the ... letter was a part of their agreement with respondent.

*Smith v. Commissioner*, 1989–87 at 415–89–416–89 (citations omitted).

In *Neilson v. Harrison*, 131 F.2d 205, 209–10 (7th Cir.1942), the court decided that a condition the taxpayer placed on her waiver must be enforced.

If, however, the Commissioner, knowing that the taxpayer relied on the condition, but believing that it was of no legal effect, accepted the conditional waiver and thereby instilled in the taxpayer a sense of security, the effect was to ensnare the unsuspecting taxpayer. "The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial."

(citation omitted).

Mr. Hodgekins argues that the government should not be allowed to interpret his waiver so as to eliminate its conditions. The case law supports the position that Form 2751 places conditions upon the effect of Form 2750. Although Form 2750 provided for an assessment of a 100% penalty under § 6672, that form was conditioned upon Form 2751, which: (a) the government drafted and refused to modify; (b) Mr. Hodgekins executed and sent to the government; (c) the government accepted along with Form 2750; and (d) was repeated in the Mr. Marvel's letter informing Mr. Hodgekins that the government had approved closing the case against him, subject to reopening "in the event litigation is initiated and it is decided to interplead potentially responsible persons."

The cases cited by Mr. Hodgekins do not depend upon the government's officials having executed the conditions placed on the waivers. In *Smith v. Commissioner*, T.C. Memo. 1989–87, and *Windfall Grain Co. v. Commissioner*, 23 B.T.A. 725, the government was subject to the conditions of the waivers even though the taxpayers had drafted the conditions. The cases indicate that the taxpayer and government

must agree in order to have a valid waiver of the statute of limitations. The government and Mr. Hodgekins clearly agreed to a waiver and manifested mutual assent to the conditions in Form 2751, which were reiterated in Mr. Marvel's letter. Therefore, the extension of the limitations set forth in Form 2750 is conditioned upon the events set forth in Form 2751.

▄▄▄ The government argues that a literal reading of Form 2751 does not require that Mr. Hodgekins be made a party to refund litigation for the government to re-open Mr. Hodgekins' case. Instead, the form only requires that (1) a refund action be filed; (2) the Department of Justice request reopening the case; and (3) the government decide to "implead" potentially responsible persons.

The government states that "interplead" is meaningless in Form 2751, although the government drafted the form. It appears that "implead", which has an entirely different definition, is the term the government should have used in place of "interplead". To interplead, the government would have to disclaim any interest in the property at stake, which clearly did not occur in this case. On the other hand, "implead" means "to bring a new party into an action on ground that new party is, or may be, liable to party who brings him in, for all or part of the subject matter claim." *Black's Law Dictionary* 754 (6th ed. 1990).

The government claims that it would not have agreed to tie the recovery of the large sum involved in this case to circumstances beyond its control. By the time the government sought to add Mr. Hodgekins as a party, the court denied leave. The government cites no authority for the argument that it would not have entered into a certain agreement, and the court does not find this argument compelling.

The government claims that the parol evidence rule bars looking beyond the four corners of Form 2751 to find the parties' intention. The government argues that Form 2751 is unambiguous and should be followed literally. Therefore, the phrase "it is decided" in the form should be read to mean only that the government must

reach a decision and not that the government must succeed in adding a party to a refund action. Mr. Hodgekins claims that this interpretation would deprive the waiver's condition of any purpose; the condition would only be effective if it required that Mr. Hodgekins be made a party to the litigation.

▄▄▄ The court agrees with Mr. Hodgekins that the "literal" reading the government suggests would render the condition ineffective, and an agreement should be read so as to give effect to its terms. Further, the language chosen by the government, and retained at the government's insistence, should be construed against the drafter. Although the government chose its terms and did not allow them to be modified, it asks the court to apply literally the term "decided", but to substitute "implead" for "interplead", thereby giving its own words an entirely different meaning.

The government claims that the waiver agreement's purpose and spirit were to limit assessment to a situation in which the Department of Justice requested it stemming from related litigation, and whether the taxpayer could be brought into the same suit was not the focus of the agreement. The court does not find from reading the form or from objective factors that the bringing of Mr. Hodgekins into a refund suit was not the focus of the agreement.

The government argues at length, without citation to authority, that the tax bar considers it advantageous to have a client's 100% penalty tried separately from the other potentially responsible persons against whom the 100% penalty is assessed. This argument does not seem relevant to an interpretation of the waiver. In any event, the court cannot base its decision on the conditions in a waiver on counsel's general conjecture as to an opponent's strategy.

The government claims that by signing Forms 2750 and 2751, Mr. Hodgekins remained subject to suit until April 15, 1994 without a reopening of his case and without an assessment. Section 6501(a) allows suit without assessment if the assessment period remains open. If the waiver was

not effective because the conditions in Form 2751 were not met, however, the assessment period was not open.

The government states that the restriction placed on the waiver is unenforceable, at least as it relates to the manner of bringing suit. If the restriction is unenforceable, then the waiver which depended upon the restriction is not effective.

Applying the burden-shifting standard set forth in *Adler v. Commissioner*, 85 T.C. at 540, the court determines that Mr. Hodgekins has met his burden of demonstrating that this suit was filed beyond the limitations period. The government has come forward with evidence of the waiver in Form 2750. Mr. Hodgekins, in turn, has shown that Form 2751 attached a condition to the waiver, that the condition has not occurred, and therefore that the waiver is not effective. Accordingly, Mr. Hodgekins is entitled to summary judgment.

### III.

For the foregoing reasons, the court hereby DENIES the government's motion for leave to file a rebuttal brief, DENIES the defendant's motion to strike, and GRANTS the defendant's motion for summary judgment.

SO ORDERED.