**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Barry J. HODGEKINS, Defendant–Appellee.**

Nos. 92–3496, 93–2290.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1994.

Decided June 29, 1994.

Gary R. Allen, Kenneth L. Greene, John A. Dudeck, Jr. (argued), Washington, DC, Clifford D. Johnson, Asst. U.S. Atty., South Bend, IN, Douglas W. Snoeyenbos, Peter Sklarew, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for the U.S. in No. 92–3496.

Ernest J. Szarwark (argued), Gerald F. Lutkus, Stephen A. Seall, Barnes & Thornburg, South Bend, IN, for Barry J. Hodgekins.

Gary R. Allen, Kenneth L. Greene, John A. Dudeck, Jr. (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Clifford D. Johnson, Asst. U.S. Atty., South Bend, IN, for the U.S. in No. 93–2290.

Before POSNER, Chief Judge, and RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

Barry J. Hodgekins became the treasurer of Josam Manufacturing Co., Inc., in December 1984. In August 1985 the company went bankrupt. The Internal Revenue Service (IRS) then assessed tax penalties in excess of $800,000 against Hodgekins under 26 U.S.C. § 6672 for Josam's failure to pay withholding taxes. Hodgekins filed a protest to this proposed assessment. The IRS agreed to close the case if Hodgekins executed a waiver of the statute of limitations, which allowed the government to reopen the case without the bar of the statute of limitations "in the event refund litigation is initiated and it is decided to interplead potentially responsible parties."

The IRS proceeded to seek tax assessments against another highly placed employee of Josam, Jerrell Barnhill. Barnhill filed suit in the district court challenging these assessments. Over two years later, the IRS sought leave to file a "counterclaim" against Hodgekins in the Barnhill case, even though he was not a party. The district court did not allow this (the IRS never appealed that decision). The IRS then filed a separate action against Hodgekins. He asserted the statute of limitations as an affirmative defense and then made a motion for summary judgment on that basis. The district court granted that motion. In doing so, it interpreted the plain meaning of Hodgekins' waiver of the statute of limitations. The court determined that the waiver did not apply

because no interpleader had occurred. The court also awarded Hodgekins $2500 in attorney's fees 832 F.Supp. 1255. The government appeals and we affirm.

## I. Background

Josam Manufacturing Co., Inc.—a plumbing supply manufacturer—experienced severe cash flow problems dating back to 1977. It juggled payments with its creditors, paying some immediately, avoiding others, but ultimately paying all. Although cash was tight, the day-to-day operation of the business proceeded normally.

In August of 1984, Josam hired Barry J. Hodgekins to supervise the transfer of the company's production facilities. Hodgekins had no responsibility over financial matters. His job involved the production side of the business. Nevertheless, on December 4, 1984, Hodgekins was named Josam's treasurer. Even though his title changed, Hodgekins' job responsibilities did not; he remained primarily involved in production.

Josam's vice-president, Jerry Barnhill, and its president, Lewis Polster, dealt with the company's financial responsibilities. As Josam's cash flow problems festered, Polster decided which creditors to pay and Barnhill carried out these financial policies. To maintain needed cash, Josam began to postpone payment to the government of federal taxes withheld from employee salaries. Hodgekins learned of Josam's failure to pay its withholding tax obligations during a meeting on July 24, 1985. One week after the meeting, Josam filed a petition for bankruptcy.

Polster stepped down as Josam's president on October 1, 1985, and appointed Hodgekins as his replacement. The IRS began to investigate the company. Section 6672(a) of the Internal Revenue Code allows the IRS to assess a personal tax penalty against anyone who is responsible to pay a company's withholding tax obligations, but willfully fails to do so. On November 25, 1985, the IRS proposed a 100% tax assessment against

Hodgekins, in the amount of $544,660.96, for Josam's failure to pay taxes withheld from employee salaries in the second quarter of 1985. About one month later, the IRS proposed another 100% tax assessment against Hodgekins for Josam's failure to pay withholding taxes in the third quarter of 1985. This second assessment totalled $302,526.92.

Hodgekins filed an official protest to these proposed tax assessments. Basically, he took the position that he was not responsible to manage Josam's tax affairs in the second and third quarters of 1985; therefore, he could not be liable for a personal tax penalty under section 6672(a). After receiving his protest, the IRS entered a settlement with Hodgekins, deciding that his case should be closed without assessing any tax liability. As a condition to the settlement, Hodgekins had to execute IRS form 2750 entitled "Waiver Extending Statutory Period for Assessment of 100 Percent Penalty" and IRS form 2751 entitled "Proposed Assessment of 100 Percent Penalty." Form 2750 extended the statute of limitations in Hodgekins' case until April 15, 1994. But form 2751 restricted the method by which the IRS could reopen the case. On the reverse side of form 2751, the IRS purported to close Hodgekins' case, but reserved the right to reopen it only "at the request of the Department of Justice in the event refund litigation is initiated and it is decided to interplead potentially responsible persons." [1]

In the meantime, the IRS directed its attention to Barnhill. The agency proposed a 100% tax assessment against him for Josam's failure to pay its withholding tax obligations. Barnhill mailed the IRS a partial payment, and then demanded a refund of that payment. When the IRS refused, he filed a refund suit in the district court. He sought to litigate not only his entitlement to a refund, but also his responsibility to pay the entire tax penalty. The IRS filed a counterclaim against Barnhill, and also brought a third-party complaint against Lewis Polster,

---

1. The full text of the provision which appeared on the back of form 2751 follows:

It is being recommended that your case be closed without the assessment of the 100 percent penalty at this time. Your case is subject to reopening at the request of the Department of Justice in the event refund litigation is initiated and it is decided to interplead potentially responsible persons.

contending that he was also responsible to pay Josam's taxes. Two years later—on October 4, 1991—the government filed a motion to amend its pleadings, to bring "a counterclaim" against Hodgekins. Essentially, the government wanted to reopen its case against Hodgekins, to litigate his responsibilities for Josam's tax liabilities.

The district court denied the government's motion for leave to amend its pleadings to bring a counterclaim against Hodgekins.[2] The government then initiated a separate case against Hodgekins, seeking a $793,-162.96 tax penalty. Hodgekins filed an answer, asserting the statute of limitations as an affirmative defense, and then filed a motion for summary judgment. The government responded that Hodgekins had waived the statute of limitations by executing form 2750. But the district court determined that the waiver in form 2750 was limited by the language on the back of form 2751 which provided that Hodgekins' case could only be reopened "in the event litigation is initiated and it is decided to interplead potentially responsible persons." The district court concluded that the government's lawsuit against Hodgekins was by no means an attempt to interplead, and therefore, that the condition for waiver had not been met. The district court granted summary judgment for Hodgekins, and awarded him $2500 in attorney's fees under 26 U.S.C. § 7430. The government appeals.

## II.  Analysis

Josam hired Barry Hodgekins in 1984 to supervise the transfer of its production facilities. Less than one year later—after Hodgekins had been given the titles of treasurer and then president—the IRS proposed that he was personally responsible to pay over $800,000 in Josam's tax liabilities. Hodgekins filed a protest, and the IRS withdrew the assessment, conditioned on Hodgekins signing forms 2750 and 2751. In those forms, Hodgekins had to agree to extend the statute of limitations in his case until April 15, 1994,[3] and to allow the IRS to reopen his case if it chose to "interplead" him in a related refund action. On October 25, 1991, the IRS initiated a separate proceeding against Hodgekins. But the district court determined that this proceeding was not in the nature of an interpleader, as that term is commonly understood, and granted summary judgment, as well as attorney's fees, for Hodgekins.

We review *de novo* the district court's grant of summary judgment. *Hamilton v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir.1992). Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, we must view the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Forms 2750 and 2751 essentially embody an agreement between the government and Hodgekins: the government promised to abandon its hot pursuit if Hodgekins signed the forms. *See* 26 U.S.C. § 6501(c)(4) (a party can waive the statute of limitations for a tax assessment by a written agreement). This case turns on the significance of

---

**2.** The district court dismissed Barnhill's case on April 8, 1992, for attorney misconduct. The government appealed that final judgment, and we reversed the district court. *See Barnhill v. United States*, 11 F.3d 1360 (7th Cir.1993). In that appeal, the government never sought review of the district court's denial of the motion to amend to assert a counterclaim against Hodgekins.

**3.** The pertinent statute of limitations, 26 U.S.C. § 6501(a), required the IRS to assess tax liability within three years of a deficient tax return. The IRS alleged that Hodgekins was responsible for Josam's withholding tax liabilities for the second and third quarters of 1985, and claims that those deficiencies would have been part of Josam's April 15, 1986 tax filing. Therefore, under the statute of limitations, the IRS had three years from April 15, 1986—or until April 15, 1989—to assess taxes against Hodgekins. By executing form 2750, Hodgekins extended the statute of limitations five years, to April 15, 1994, subject to the prerequisites for reopening contained in form 2751.

those forms. We give effect to the words in the forms according to their plain meaning, because the plain meaning is the best indication of what the parties intended. *See Stenclik v. Commissioner,* 907 F.2d 25, 27 (2d Cir.1990) (court interprets a written agreement waiving the three-year statute of limitations for tax assessments by viewing the terms of the agreement because "[t]he parties to such an extension are free to determine the terms of the extensions....."). *Cf. JAK Productions v. Wisa,* 986 F.2d 1080, 1088 (7th Cir.1993) ("As a matter of contract interpretation, the court has a duty to ascertain the intent of the parties by examining the plain meaning of the contract."); *Matter of Witkowski,* 16 F.3d 739, 745 (7th Cir.1994) (courts should enforce statutes according to their plain meaning); *United States v. Swigert,* 18 F.3d 443, (7th Cir.1994) (a court should give effect to the plain meaning of a plea agreement). Essentially, the forms involved Hodgekins' waiver of the statute of limitations. *See* 26 U.S.C. § 6501(c)(4). Plainly, by signing the forms, he agreed to waive the statute of limitations for five years, subject to the proviso that the government could only reopen his case by filing an interpleader action.

By getting Hodgekins to sign form 2750, the IRS successfully extended the statute of limitations by five years. Curiously, however, in language added to form 2751 the IRS severely restricted the method by which it could reopen Hodgekins' case; the IRS bound itself to the peculiar procedural method of interpleader as the exclusive way to reopen. This is curious and peculiar because the government was unlikely to file an interpleader action concerning Josam's tax liabilities. As the district court recognized, "[t]o interplead, the government would have to disclaim any interest in the property at stake, which clearly did not occur in this case." *United States v. Hodgekins,* 805 F.Supp. 653, 662 (N.D.Ind.1992); *see also Black's Law Dictionary, Special Deluxe Fifth Edition,* 733 (1979). It would be inherently contradictory for the government to interplead Hodgekins in an action to settle Josam's tax liabilities, if the government disclaimed interest in those liabilities. If the government disclaimed interest in Josam's tax liabilities, Josam would have no tax liabilities, and there would be no need for an interpleader action to apportion liability. Indeed, interpleader just does not fit in these circumstances. "Interpleader is an equitable procedure by which a person holding property (commonly called a stake-holder) who is or may be subject to inconsistent claims on that property (the stake) can bring together all the claimants in a single action." Jack H. Friedenthal, Mary K. Kane, Arthur R. Miller, *Civil Procedure,* 763 (1985). The procedure does not—and likely would not—apply to the government's attempts to recover Josam's tax liabilities.

As it turns out, the IRS used the wrong word when drafting form 2751. The IRS meant to condition reopening the case on its decision to "implead" Hodgekins in future refund litigation. "Implead" is more a generic word, which basically means to sue, or more specifically, to bring a party into an action. *See Black's Law Dictionary, Special Deluxe Fifth Edition,* 679 (1979). In its brief, the government admits that it used the wrong word, but argues that this should not matter: "[n]o one, including the District Court, was confused by the erroneous reference to 'interplead' instead of 'implead.'" The government asks us to ignore the plain meaning of interplead, and, on that basis, to reinstate its action against Hodgekins.

The government is asking for a favor which few, if any, litigants get in this court. The government wants us to ignore the word the IRS used in its own form, and to subject someone to litigation and a possible steep tax penalty based on a word the IRS meant to use. But we hold the IRS to a more realistic standard. The IRS is an arm of government with authority to subject citizens to the burdens of litigation. With this authority comes a responsibility to be careful. The IRS cannot—as it did with Hodgekins—compel a party to give up the protection afforded by the statute of limitations, based on a representation that it would only seek to reopen a claim under a limited condition, and then try to ignore the condition, or substitute a different condition.

The IRS represented to Hodgekins that it would not reopen its claim except to interplead him. Hodgekins accepted this representation, and by wit or by serendipity, he signed on the dotted line; he agreed to extend the statute of limitations contingent on the government fulfilling an improbable condition. The government did not fulfill the interplead condition, but sued him anyway. The district court was correct to determine that the suit is barred by the statute of limitations because Hodgekins never agreed to extend the statute of limitations to allow impleader.

 The district court did not stop at granting Hodgekins summary judgment. It also awarded him $2500 in attorney's fees under 26 U.S.C. § 7430.[4] Generally, a taxpayer who prevails against the government in tax litigation can recover attorney's fees if the taxpayer proves that the government's position and the litigation was not substantially justified. 26 U.S.C. § 7430(c)(4); *Kenagy v. United States*, 942 F.2d 459, 463 (8th Cir.1981). The district court determined that the government's attempt to ignore its own interpleader requirement when reopening Hodgekins' case was not substantially justified. As the government concedes, we review that determination under an abuse of discretion standard. *See Kenagy*, 942 F.2d at 463; *cf. Pierce v. Underwood*, 487 U.S. 552, 557–564, 108 S.Ct. 2541, 2545–2550, 101 L.Ed.2d 490 (1988).

 "Of course, the 'abuse of discretion' standard does not mean no review at all. It simply means that we shall not second-guess the decision of a trial judge that is in conformity with established legal principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one could expect a reasonable trial judge to select." *United States v. Koen*, 982 F.2d 1101, 1114 (7th Cir.1992). To overturn the district court's award of attorney's fees, therefore, we would have to say that the district court's decision—that the government's position was not substantially justified—was not a reasonable option.

Even though many reasonable persons, including those arguing for the government, might disagree with the district court's decision, that does not make the decision unreasonable. The district court could have reasonably concluded that the government had no basis to construe the word "interplead" to mean "implead," and therefore, that the government's position was not substantially justified. That call is for the district court to make. It did not abuse its discretion in awarding $2500 in attorney's fees.

### III. Conclusion

For the foregoing reasons, we AFFIRM.

---

4. Hodgekins actually spent over $29,000 in attorney's fees. But his insurance company paid his defense costs, and he paid only a $2500 deductible. The district court awarded fees only in the amount of the deductible.