T.C. Memo. 1997-456


UNITED STATES TAX COURT


DENIS BRODY AND CAROL BRODY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15934-86.          Filed October 8, 1997.


<u>Scott A. Brody</u>, for petitioners.

<u>Christopher W. Schoen</u>, for respondent.


MEMORANDUM OPINION

WHALEN, <u>Judge</u>:  Respondent determined a deficiency of
$10,209.09 in petitioners' 1978 income tax, and determined
that the entire underpayment for that year is a substantial
underpayment attributable to tax-motivated transactions
with the result that the annual rate of interest is 120
percent of the underpayment rate, pursuant to former

section 6621(c).  All section references in this opinion
are to the Internal Revenue Code, as amended.

The deficiency determined by respondent is based upon
the following adjustment as described in the notice of
deficiency:

> It has been determined that your distributive
> share of the loss from the B.D.B. Properties
> partnership which has an interest in the
> Thunderbird Associates Ltd. partnership is
> $(2,564.00) in lieu of $(31,255.00) which was
> reported on your tax return for the taxable
> year ending 1978.  The Thunderbird Associates,
> Ltd. partnership has been agreed to at the
> partnership level.

As suggested above, one petitioner, Mr. Brody, held a
partnership interest in BDB Properties (BDB) and that
partnership held an interest in another partnership,
Thunderbird Associates, Ltd. (Thunderbird).  Petitioners
reported a loss of $31,255 from BDB on their 1978 return
that was based upon BDB's share of the loss originally
reported by Thunderbird in the amount of $953,129.
Respondent determined that the correct amount of
Thunderbird's loss is $78,120 and, accordingly, adjusted
petitioners' return in the subject notice of deficiency
by reducing their share of the Thunderbird loss from
$31,255 to $2,564.

This is the second opinion that we have issued in this case. In our first opinion, <u>Brody v. Commissioner</u>, filed at T.C. Memo. 1988-203 (hereafter Brody I), we addressed petitioners' motion for summary judgment in which they took the position that the adjustment, described above, is barred under the period of limitations on assessment and collection prescribed by section 6501(a). Petitioners' motion was based upon the fact that the special consent to extend the period of limitations on IRS Form 872-A on which respondent relied in issuing the notice of deficiency is expressly limited to adjustments from Thunderbird. Petitioners argued that the subject adjustment is outside the scope of the special consent because they did not directly own a partnership interest in Thunderbird but owned such interest only indirectly through Mr. Brody's partnership interest in BDB.

In Brody I, we held that the subject adjustment was well within the scope of the consent and, accordingly, was not barred by the period of limitations on assessment and collection in section 6501(a). In interpreting the special consent, we took note of the fact that petitioners are the ultimate taxpayers with respect to a share of the partnership items reported by Thunderbird for 1978, and petitioners deducted on their 1978 return a share of the

losses reported by Thunderbird. We found that the language of the consent is clear and unambiguous, and there was no justification to look beyond the terms of the consent in determining the intent of the parties. We interpreted the terms of the consent to mean that the parties thereto mutually agreed that adjustments to petitioners' 1978 return during the extended period could be made to petitioners' share of the partnership items reported by Thunderbird. We noted that partnership items of BDB which did not originate with Thunderbird were not covered under the consent. We further noted that if the consent had specified that adjustments could be made to the partnership items from BDB, as petitioners claimed were necessary, then the consent would have covered all partnership items from BDB. Thus, it would have been a different and broader consent than the consent that was executed.

Shortly after we issued Brody I, proceedings in the case were stayed for some time pursuant to the automatic stay in bankruptcy, 11 U.S.C. section 362(a)(8) (1994). When the bankruptcy stay was lifted, we set the case for trial.

In due course before trial, respondent filed a motion for summary judgment on the ground that the sole assignment of error raised in the petition had already been decided by

the Court in Brody I. Respondent's motion points out that the only facts raised in the petition are facts relating to the period of limitations defense that was considered by the Court and rejected in Brody I. For example, paragraph six of the petition states as follows:

> Because neither Denis Brody nor Carol Brody was a partner in Thunderbird, no adjustment to the return of Thunderbird could have directly affected the return filed by Mr. and Mrs. Brody. Instead, the alleged deficiency is directly resultant from adjustments to the Form 1065 filed by BDB Associates. Clearly, adjustments to BDB's return are not excepted from the operation of the statute of limitations by the restrictive language on the Form 870-A.

Respondent's motion also notes that petitioners had not amended their pleadings to raise any issue other than the period of limitations issue decided in Brody I. The Court calendared respondent's motion for summary judgment for hearing on the same day as the case was set for trial.

Shortly before trial and hearing on respondent's motion, petitioners filed a cross-motion for summary judgment in which they raise for a second time the issue that was considered and decided in Brody I, that is, whether the notice of deficiency was issued within the period of limitations on assessment and collection described by section 6501(a). Petitioners' cross-motion states as follows:

Petitioner [sic] respectfully submits that this Court's prior holding that the consent encompass' B.D.B. is in error. Petitioners contend that the 872-A executed by it [sic] specifically limits the scope of any adjustments to Petitioners' income to those adjustments resulting only from modifications to any interest that Petitioner may have in Thunderbird Associates, Ltd. Petitioners do not own an interest in Thunderbird Associates, Ltd. but rather, Denis Brody was a partner in B.D.B. Properties, a New York general partnership. B.D.B. Properties owned an interest in Thunderbird Associates, Ltd., a Texas Limited Partnership. B.D.B. Properties, on or about April 15, 1979 filed a form 1065 for the year 1978, including its share of Thunderbirds' net taxable loss in its return. The Petitioners in their 1978 Income Tax Return Form 1040 included their share of B.D.B.'s net taxable loss in their Tax Return. * * *

The 872-A executed by Petitioners and Respondent clearly limits any adjustments to Petitioner's [sic] income only as a result of an adjustment to Thunderbird Associates, Ltd. Since Petitioners are not a partner in Thunderbird, an adjustment to Thunderbirds' income in 1978 has no effect [sic] on Petitioner's taxable income 1978 notifications and adjustments would have to just be made to the return of B.D.B. However, since the 872-A did not also extend the Statute of Limitations with respect to B.D.B., the Internal Revenue Service is barred from making the instant assessment which purports to adjust Petitioner's [sic] income as a result of an adjustment to B.D.B.'s income for 1978.

*       *       *       *       *       *       *

Since the Petitioners were not Partners in Thunderbird Associates, Ltd., and since no special consent was utilized to extend the Statute of Limitations on behalf of the BDB Partnership, no flow-through may occur.

*       *       *       *       *       *       *

It is Petitioners [sic] contention that the 872-A executed by the parties is clear and ambiguous [sic] on its face and therefore must be strictly construed in accordance with its own terms.

The thrust of petitioners' argument is that respondent is legally precluded from adjusting petitioners' income to correct their share of the losses reported from Thunderbird because BDB was not specifically mentioned in the consent, and petitioners did not directly own an interest in Thunderbird. We answered petitioners' argument in Brody I as follows:

Petitioners' only claim is that the omission of any reference to BDB in the consent forecloses any adjustment to their share of the losses of Thunderbird after the general period of limitations expired because they did not directly own an interest in Thunderbird. Petitioners' argument simply begs the question of what was intended by the parties as objectively determined from the language used in the consent. The fact that petitioners did not directly own an interest in Thunderbird means nothing different in the context of interpreting the consent than it meant in the context of petitioners' income tax return. Petitioners deducted losses from Thunderbird on their return, in accordance with their partnership interest in BDB, and the consent is clearly intended to cover partnership items from Thunderbird. It is also clear that is precisely what was intended by the Commissioner.

Furthermore, had the consent specifically named BDB, as petitioners claim is necessary, it would have been a different agreement with broader legal effect than the subject consent. In that case, any partnership item flowing from BDB into petitioners' return, not just partnership items from Thunderbird, would have been

covered by the extended limitations periods.  The parties, of course, could have formulated their agreement in that manner but there is no reason to require them to have done so.

Moreover, under petitioners' construction, the consent form would have been a nullity ab initio.  We have no reason to believe that the parties would have undertaken a meaningless act and we will not interpret the consent to so provide when there exists a reasonable interpretation which accomplishes the intent of the parties as objectively interpreted.  "It must be assumed that an effective and not a futile act was intended."  Stange v. United States, 282 U.S. at 277.

Petitioners acknowledge in their cross-motion that the issue raised therein was "previously addressed by this Court" in Brody I but they argue that the Court's opinion in Brody I "was mistaken" in finding the intent of the parties to the special consent.  Based upon "new and additional information" that petitioners claim to have submitted with their cross-motion for summary judgment, they ask the Court "to reach a contrary conclusion" from that reached in Brody I.  In the memorandum that petitioners filed in support of their cross-motion (referred to herein as petitioners' memorandum), petitioners assert that there is "before the Court on this motion" the following "additional facts" which were "not previously before the Court":

a.  The affidavit of Denis Brody which makes clear that the Petitioners did not consent to an extension of the statutory period with respect to B.D.B.;

b.  Respondent's Response To Petitioners' Request To Admit and Respondent's Response To Petitioners' Interrogatories.  These documents show that there is no evidence that Respondent intended to include adjustments to B.D.B. within the Form 872-A, and that Respondent has no witnesses who can address the intent of Respondents at the time the documents were executed;

c.  Portions of Respondent's file, which show that the Respondent had every available document necessary to show to the agent that Petitioner was a partner in B.D.B., and not Thunderbird.  More importantly, the documents requesting information of Petitioner do not even refer to Thunderbird.

At the hearing of petitioners' cross-motion for summary judgment, petitioners' attorney formulated their position in the following terms:

Our position is that we [are] addressing the same issue [as the issue decided in Brody I] but that it has not been resolved by the Court, by this Court's prior memorandum opinion because there are additional facts from which we are asking the Court to reach a contrary conclusion and these facts are very simple and we believe that they are significant enough to justify this Court rendering an opposite conclusion, and those facts are as follows:  the fact that no other partner of the BDB Partnership was requested to sign a waiver or extension; the fact that there was no indication in the Respondent's file that the person who prepared the consent had any documentation of the existence of the BDB Partnership or Partnership files; and the fact

that the only place that Mr. Brody's name appeared in the Thunderbird file was as General Partner of BDB and not as an individual partner of Thunderbird.

It is our position that it was Respondent's procedure at the time that this extension was filed to obtain consents from the partners of a partnership and to determine the deficiencies at the partnership level, that in this particular case an error was made by the person who prepared the consents who presumed that Mr. Brody was a partner in Thunderbird and not a partner of some other partnership that owned an interest in Thunderbird.

It is our belief that had he known the existence of other partners of BDB that he would have, to be consistent, would have asked all of the other partners of BDB to execute waivers, that is was [sic] the position to have a partner's tax return resolved at the partnership level for distributions from a partnership and that in this case if this Court makes this deficiency applicable to Mr. Brody his return will then be inconsistent with the return of BDB and inconsistent with the return of all the other partners of the BDB partnership.

Petitioners assert that the Court misconstrued their intent. They point to the statement in Brody I that "Petitioners do not claim that they misunderstood what was intended by the restrictive language in the consent or that they intended something different". Based upon Mr. Brody's affidavit, submitted as part of the new and additional information, petitioners argue that the Court was mistaken. According to petitioners:

Obviously the Court was mistaken, since Petitioners have outright stated that they did

not believe, as stated to Respondent in writing
back in 1983, that the Consent encompassed
adjustments which had to be made through B.D.B.

Mr. Brody's affidavit on which petitioners rely states that

he considered the consent with his attorneys and:

We did not believe that the execution of the
document could result in the imposition of a
tax against me because the form did not include
B.D.B., and I was not a partner in Thunderbird.

*     *     *     *     *     *     *

My attorneys and I addressed this fact [i.e.,
that petitioner was not a partner in Thunderbird]
at that time, and it was our belief that the
failure to include B.D.B. in the waiver was a
fatal defect.

Petitioners also assert that the Court misconstrued

respondent's intent.  They argue that the Court erroneously

"went beyond the written terms of the consent * * * [and]

considered the intent of the Service, an intent which is

not in evidence."  Petitioners argue that "there is

absolutely no evidence as to what concerned the

Respondent."  Petitioners also argue, based upon the

"new and additional information" attached to their cross-

motion for summary judgment, that respondent's agent simply

"presumed that Mr. Brody was a partner in Thunderbird".

As we understand it, petitioners' argument is that the

Commissioner's agent who prepared the consent on behalf of

the Commissioner mistakenly thought that Mr. Brody held a partnership interest in Thunderbird and did not realize that Mr. Brody's interest in Thunderbird was based upon his interest in another partnership, BDB. Petitioners' trial memorandum states as follows:

> Additional evidence has been submitted to the Court to show that the service did not intend or know that adjustments to another partnership [i.e., BDB] had to be made before the deficiency could be imposed upon Petitioners. The facts and evidence show that the I.R.S. did not properly prepare the consent, and the deficiency issued is not covered by the consent. [Emphasis deleted.]

Petitioners cross-motion for summary judgment is really in the nature of a motion for reconsideration of our opinion in Brody I. We find nothing in petitioners' cross-motion or in petitioners' memorandum in support thereof that leads us to believe that we erred in Brody I. Petitioners base their cross-motion upon the "new and additional information" submitted therewith, but they present no basis for the Court to consider such "new and additional information". In Brody I, both parties argued, and the Court found that the consent is clear and unambiguous and that there was no justification to look to extraneous evidence in order to determine the intent of the parties to the consent. See, e.g., <u>Woods v. Commissioner</u>, 92 T.C. 776 (1989). Accordingly, in Brody I the Court

construed the intent of the parties to the consent based upon the plain meaning of the words used in the consent. See United States v. Hodgekins, 28 F.3d 610, 614 (7th Cir. 1994).

In their cross-motion for summary judgment, petitioners continue to assert that the consent is "clear and ambiguous [sic] on its face and therefore must be strictly construed in accordance with its own terms." Thus, petitioners do not argue that the consent is ambiguous, that a mutual mistake was made, or that there is any other reason to consider extraneous evidence in determining the intention of the parties to the consent. See, e.g., Woods v. Commissioner, supra. Accordingly, we have no reason to consider the "new and additional information" submitted by petitioners or to reconsider our opinion in Brody I.

Even if we were to consider the "new and additional information" submitted by petitioners, the result would be the same as the result in Brody I. Generally, in determining whether the parties to a consent to extend the period of limitations have reached "agreement", as required by section 6501(c)(4), courts look to the objective mani-festation of mutual assent as evidenced by the parties' overt acts and do not take into account the parties' secret

intentions.  Mecom v. Commissioner, 101 T.C. 374, 385 (1993), affd. without published opinion 40 F.3d 385 (5th Cir. 1994); Kornish v. Commissioner, 90 T.C. 684, 693 (1988).  In this case, petitioners intentionally signed the subject consent form and thereby manifested their assent to the terms contained therein.  According to Mr. Brody's affidavit, he harbored the unstated view that respondent's agent had made a mistake in preparing the consent by limiting it to adjustments from Thunderbird.  Mr. Brody's affidavit does not suggest that petitioners misunderstood what was intended by the restrictive language in the consent or that they intended a different restriction. Petitioners merely harbored the secret belief that the consent would not have the legal effect of extending the period of limitations with respect to their 1978 return. Thus, petitioners made a unilateral mistake concerning the legal effect of the consent.  This is not the type of mistake for which relief is warranted.  See Estate of Caporella v. Commissioner, 86 T.C. 285, 298 (1986), affd. 817 F.2d 706 (11th Cir. 1987); 13 Williston on Contracts, sec. 1587 (3d ed. 1970).

Petitioners claim that the "new and additional information" submitted with their cross-motion for summary judgment shows that the Court misconstrued respondent's

intent.  According to petitioners' argument, summarized above, the person who prepared the consent on behalf of respondent thought that Mr. Brody held an interest in Thunderbird directly and did not know that Mr. Brody held his interest in Thunderbird through BDB.  Petitioners contend that if respondent's agent had known, then he "would have asked all of the other partners of BDB to execute waivers".  Petitioners complain that "if this Court makes this deficiency applicable to Mr. Brody his return will then be inconsistent with the return of BDB and inconsistent with the return of all the other partners of the BDB partnership."

Accepting petitioners' factual allegations as true for purposes of this discussion, we agree that respondent's agent would have asked all partners of BDB, including petitioners, to execute waivers of the period of limitations on assessment and collection.  Prior to the enactment of the uniform audit procedures for partnerships in sections 6221 through 6233, the Commissioner was required to obtain a consent for extension of the period of limitations from each of the partners, not the partnership.  See Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 267 (J.

Comm. Print 1982). However, even assuming that respondent's agent did not know that Mr. Brody held his interest in Thunderbird through BDB, there is no reason to believe that respondent would have acted differently as to petitioners. Nothing attached to petitioners' cross-motion for summary judgment suggests that respondent would not have sought to obtain a waiver of the period of limitation from petitioners or that respondent would have sought a waiver from petitioners on different terms.

Furthermore, we agree with petitioners that if the period of limitations remains open with respect to petitioners' 1978 return but not with respect to other partners of BDB, then "inconsistent results" could follow. In fact, that is one of the problems which led to the enactment of the unified partnership procedures in sections 6221 through 6233. See id. at 268 ("Inconsistent results could be obtained for different partners with respect to the same item."). However, the possibility of any such inconsistent results does not mean that respondent and petitioners failed to reach an "agreement" to extend the period of limitations with respect to the losses from Thunderbird reported on petitioners' 1978 return or that there is any reason not to give effect to that agreement.

Finally, we note that petitioners elected not to proceed to trial. After the parties had completed their argument on the motion and cross-motion for summary judgment, the following exchange took place between the Court and petitioners' attorney:

THE COURT: And so there is no trial, I take it?

MR. BRODY: On behalf of the Petitioner we believe that we have submitted our evidence to the Court on the motions.

To reflect the foregoing,

An order and decision shall be entered granting respondent's motion for summary judgment and denying petitioners' cross-motion for summary judgment.